**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RONALD HANSEN, Individually,              )<br>                      Plaintiff,              )<br>        vs.                                         )<br>CLARK COUNTY, a Nevada political  )<br>subdivision,                                    )<br>                      Defendant.           )<br>_____) | Case No.: 2:05-CV-672-BES-VPC<br><br>**ORDER** |

Before this Court is Defendant Clark County's ("Clark County") Motion for Summary Judgment (Doc. #18). Plaintiff Ronald Hansen ("Hansen") filed his Opposition to the Motion for Summary Judgement (Doc. #22) and Clark County filed its Reply to the Opposition (Doc. #25). For the following reasons, this Court grants Clark County's Motion.

**I. Background**

Hansen is 62 years old and is an employee of Clark County Development Services division. (Pl['s] Complaint (#1)2.) For ten years prior to beginning his work for Clark County, Hansen held the role of Planner with the City of Las Vegas. (App. To Pl['s] Opposition (#24), Ex. 3 at 30.) Hansen received his Bachelor's Degree in Geography from San Diego State University after earning his Associate's Degree in Geography at Grossmont Junior College. Id. at 18. He was hired in May, 1997 by Clark County as a Zoning Plans Checker II which is now called a Level 29 Plans Examiner II ("Plans Examiner"). (Pl['s] Complaint (#1)2.) A Plans Examiner has the duty of reviewing residential, industrial, commercial, and public project plans for compliance with building and zoning codes and regulations. Id. A Plans Examiner in Hansen's division reviews plans using Title 30 zoning ordinances. (App. To Pl['s] Opposition

(#24), Ex. 8 at 11.) Hansen was offered a position at the same level on the MPT team, which he turned down. (Def['s] Motion for Summary Judgment (#18)6.) He did so even though he was advised that it would be unlikely for him to get another opportunity to join the MPT team. Id. The MPT team performs services for developers with specially negotiated development agreements and reviews plans using Title 29 zoning ordinances, which allow for major projects to have their own regulations. (Def['s] Motion for Summary Judgment (#18)11.)

Hansen's performance evaluations show that he had trouble with communication, creative thinking, customer service, and problem solving. (Def['s] Motion for Summary Judgment (#18)6-9.) The performance reviews also recommend that he be more tolerant and pay more attention to detail. Id. Furthermore, while Hansen worked for the City of Las Vegas, he was promoted to the position of Senior Planner, but was later involuntarily demoted. Id. at 9-10. He did not finish the probationary period because he could not complete the duties required for the position. Id. His cited problems with the City of Las Vegas involved communication skills, attention to detail, and problem solving. Id.

In April, 2004, Clark County offered a promotion to the position of Building Plans Examiner Specialist (Zoning) in the specialized MPT section of the Development Services department. (App. To Pl['s] Opposition (#24), Ex. 2 at 13.) Hansen applied for the position. (Pl['s] Opposition (#24)2.) The qualifications for the position were as follows: (1) Bachelor's Degree in planning or Architecture or a field related to the work; AND
(2) Three (3) years of full-time professional experience in a combination of residential, commercial, and industrial plans examination or design; (3) Previous experience as a plans examiner may be substituted for the Bachelor's Degree on a year-for-year basis. (App. To Pl['s] Opposition (#24), Ex. 2 at 13.)

This position is classified as a "Lead" position on the MPT team. (Def['s] Motion for Summary Judgment (#18)10.) The person selected for this position not only needed technical qualifications, but also leadership skills, customer service skills, problem solving skills, communication skills, and the ability to work in a team environment. Id. at 11. The MPT team consists of about 13 people, roughly half male and half female. Id.

The Human Resources department ("HR") drafted the job announcement including all the minimum qualifications. Id. at 12. HR also screened all the applications to confirm that the minimum requirements were met and approved all the questions that were asked in the interview process. Id.

Rebecca Ragain is the Assistant Planning Manager for the MPT team and sat on the interview board as she had done numerous times in the past. Id. She is the supervisor for the "Lead" position. Id. The other members of the interview board were Shane Ammerman ("Ammerman") and Joel McCullough ("McCullough").

The interview questions are hypothetical questions that have been used before or are tailored toward the position at issue. Id. The questions are provided to the applicants before the interview and are asked in the same order when the interview takes place. Id. at 15. After the interview, the interview board discusses the individual's performance and when all the interviews are completed, they discuss the candidates as a whole. Id. The committee also considers the candidate's education and job experience. Id. First, the interview board eliminates the candidates that are not a possibility and continues until there is only one remaining candidate. Id. In this case, the interview panel and pool consisted of a majority of males, as well as a majority of individuals over age 40. Id. at 23.

The interview board unanimously chose Lucy Gonzalez ("Gonzalez") who was already a member of the MPT team. Id. at 16. Gonzalez's higher education consists of 21 credits at Mesa college where she declared a major in Civil Engineering but did not graduate. (Def['s] Reply (#25)7.) Clark County hired Gonzalez in December, 1997 as an Engineering Tech I/II and she was employed in that position for one year and one month. Id. at 8-9. In January, 1999 Gonzalez was promoted to Senior Engineering Tech and she continued in that position for one year and eleven months. Id. at 8. In November, 2000, she was promoted to the position of Plans Checker I/II which she held for exactly one year. Id. At 9. Subsequently, Gonzalez received another promotion to Building Plans Examiner I/II which she held until the promotion. Clark County claims that she held this position for two years and six months and Hansen argues that she held the position for two years and five months. The job descriptions

for this position include checking plans for conformance to regulations and zoning codes among the required duties. Id. at 7-10.

The interview board chose Gonzalez because she had leadership, teamwork, customer service, and problem solving skills. (Def['s] Motion for Summary Judgment (18)17.) She also showed the communication skills necessary to work with both her teammates and developers. Id. The interview board did not choose Hansen, despite his extensive technical experience, because he lacked flexibility, problem solving, and leadership skills. Id. Colleen Wilson-Pappa ("Wilson-Pappa"), the Administrative Services Manager, did not believe that Hansen and Gonzalez had the same or similar job related knowledge, skills, abilities, and performance records and would have had concerns if the interview committee chose Hansen. Id. at 17.

Hansen argues that Gonzalez did not meet the initial work experience and education requirements for the position. (Pl['s] Opposition (#22)9.) He alleges that Clark County discriminated against him by hiring a non-qualified person for the position. Id. at 10. He also claims that there was collusion on the interview board because Gonzalez was a member of the MPT team and Ragain was her supervisor. Id. Hansen alleges that Gonzalez was already chosen for the team before the interview process began and that the interview questions were not uniform for all the applicants. Id.

Furthermore, Hansen alleges that the person with class seniority should be given first consideration under Section 17 of the collective bargaining agreement. (Def['s] Motion for Summary Judgment (#18)5.) Section 17 in pertinent part states: "If two of more employees have similar job related knowledge, skill, and abilities and demonstrated performance records, the employees with the greatest class seniority shall be given first consideration." Id. Hansen believes that this passage should have secured him the position but for the alleged discrimination. Id. Accordingly, Hansen claims he was discriminated against because of age and gender under Title VII.

Hansen also alleges claims for violations of 42 U.S.C. § 1983 and state law claims of negligent supervision and intentional infliction of emotional distress. Hansen concedes summary judgment on the Title VII claim for hostile work environment and intentional infliction

of emotional distress. (Def['s] Opposition (#25)5.) The remaining claims before the Court are for Title VII discrimination for age and gender, violations of 42 U.S.C. § 1983, and negligent supervision. Id.

**II. Analysis**

**A.     Title VII Discrimination Claim**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers' Intern. Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).

Any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). The evidence must be significantly probative, and cannot be merely colorable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

///

///

The burden-shifting framework used in discrimination claims builds upon these fundamental analyses to create a coherent standard courts employ to determine the relative merit of the parties on a motion for summary judgment. A plaintiff must first establish a prima facie case of discrimination. Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir.1985) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)); accord Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.1996); Heyne v. Caruso, 69 F.3d 1475 (9th Cir.1995). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Id. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. Id

### 1.   *Hansen's Prima Facie Case*

Title VII makes it an unlawful employment practice for an employer to, among other things, not promote an employee on the basis of age or gender. 42 U.S.C. § 2000e-2; McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). In order to show a prima facie case of discrimination, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination." Nidds, 113 F.3d at 917 (internal quotations omitted). On a motion for summary judgment, the degree of proof required for a prima facie case "is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). The plaintiff's prima facie case may be based on direct or circumstantial evidence of discriminatory intent or a rebuttable presumption of discrimination arising from the factors set forth in McDonnell Douglas. See Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).

Here, Hansen relies on the McDonnell Douglas framework to make out his prima facie case. To establish a prima facie case under McDonnell Douglas, a plaintiff must show that: (1) he belongs to a protected class; (2) he applied and was qualified for the position for which he was denied; (3) he was rejected despite his qualifications; and (4) the employer filled the

///

1  position with an employee not of the plaintiff's class.  Dominguez-Curry, 424 F.3d at 1037
2  (citing McDonnell Douglas, 411 U.S. at 802).

3  Clark County only contests the second element of Hansen's prima facie case.  Clark
4  County contests that Hansen was not the most qualified candidate for the job.  The minimum
5  requirements for the position are: (1)  Bachelor's Degree in planning or Architecture or a field
6  related to the work; AND (2) Three (3) years of full-time professional experience in a
7  combination of residential, commercial, and industrial plans examination or design; (3)
8  Previous experience as a plans examiner may be substituted for the Bachelor's  Degree on
9  a year-for-year basis.  (App. To Pl['s] Opposition (#24), Ex. 2 at 13.)

10  Hansen has a Bachelor's Degree from San Diego State in a field related to the work.
11  He also has over three years of full-time professional experience in a combination of
12  residential, commercial, and industrial plans examination from his time working for Clark
13  County.  The prima facie case does not require that Hansen be the most qualified candidate
14  for the position.  It only requires that Hansen be qualified for the position.  The Court finds that
15  Hansen has established the second element.  As the first, third, and fourth elements are
16  conceded by Clark County, Hansen has met the burden of proving a prima facie case.

17  **2.      *Clark County Has Demonstrated Legitimate, Nondiscriminatory Reasons for Not Promoting Hansen***

18  Hansen has shown a prima facie case of discrimination so the burden shifts to Clark
19  County to offer evidence that the adverse action "was taken for other than impermissibly
20  discriminatory reasons."  Wallis, 26 F.3d at 889.  A defendant meets its burden of production
21  by "introduc[ing] evidence, which, *if taken as true*, would *permit* the conclusion that there was
22  a nondiscriminatory reason for the adverse action."  Bodett v. CoxCom, Inc., 366 F.3d 736,
23  742 (9th Cir. 2004) (quoting St. Mary's Honor Ctr., 509 U.S. at 509) (emphasis original).  If the
24  employer satisfies this burden, there is no longer a presumption of discrimination.  Id.

25  Clark County has provided several reasons why Gonzalez was chosen for the position
26  over Hansen.  Both candidates met the minimum requirements for the position which placed
27  them on equal footing for the interview process.  Gonzalez had the requisite leadership,
28  teamwork, customer service, and problem solving skills.  (Def['s] Motion for Summary

Judgment (18)16-18.) She also showed the necessary communication skills to work with her teammates and developers. Id. Furthermore, Gonzalez received positive reports from her supervisors and co-workers. Id. There was no controversy in the selection process and Gonzalez was chosen unanimously. Id. at 16.

The interview board did not choose Hansen because he lacked flexibility, problem solving, and leadership skills despite his extensive technical experience. Id. at 16-18. Wilson-Pappa, the Administrative Services Manager, did not believe that Hansen and Gonzalez had the same or similar job related knowledge, skills, abilities, and performance records and would have had concerns if the interview committee chose Hansen. Id. at 17. Hansen failed to demonstrate that he could effectively supervise people and solve problems on his own. Id. at 17. Clark County has presented sufficient evidence to permit the conclusion that there was a nondiscriminatory reason for the adverse action.

Hansen claims that Section 17 of the collective bargaining agreement provides that he should receive the position based on his seniority. Section 17 in pertinent part states: "If two of more employees have similar job related knowledge, skill, and abilities and demonstrated performance records, the employees with the greatest class seniority shall be given first consideration." (Def['s] Motion for Summary Judgment (#18)5.)

Gonzalez and Hansen were not in the same or similar position so Section 17 does not apply. As previously demonstrated, Gonzalez was more qualified for the job because of her leadership, teamwork, communication, customer service, and problem solving skills. Furthermore, Hansen and Gonzalez's performance records were vastly different. Hansen had received poor reviews in areas important to the Lead MPT team position and Gonzalez received positive reviews. Section 17 does not guarantee Hansen the position because of seniority.

### 3.   *Hansen Fails to Raise an Issue of Disputed Fact Regarding Pretext*

In response to a legitimate nondiscriminatory reasons for termination, the plaintiff must show that the proffered reasons were a pretext for discrimination. Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1148 (9th Cir. 2006) (citing St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 510-11 (1993)). Plaintiff can prove pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Lindsey, 447 F.3d at 1148. If the plaintiff offers either kind of evidence of discriminatory motive, a triable issue on the actual motivation is created even if the evidence is not substantial. See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1030 (9th Cir. 2006) ("Title VII does not require a ... plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence"); McGinest v. GTE Serv. Corp., 360 F.3d 1103 (9th Cir. 2004); Costa v. Desert Palace, Inc., 299 F.3d 838 (9th Cir. 2002), aff'd 539 U.S. 90 (2003).

Hansen tries to establish pretext by proving that Gonzalez did not meet the minimum requirements for the position and therefore should not have been allowed to interview. He also accuses Gonzalez of intentionally misrepresenting her educational background on the application. Hansen also alleges that the application process was biased because Gonzalez was already a member of the MPT team and Ragain was a member of the interview board and her co-worker and supervisor.

Gonzalez meets the minimum requirements for the Lead MPT position. As stated above, the minimum requirements for the position are a Bachelor's Degree in planning or Architecture or a field related to the work, three years of full-time professional experience in a combination of residential, commercial, and industrial plans examination or design. Previous experience as a plans examiner may be substituted for the Bachelor's Degree on a year-for-year basis. (App. To Pl['s] Opposition (#24), Ex. 2 at 13.)

Gonzalez does not have a Bachelor's degree to meet the first requirement so it is necessary that she make up for that deficiency through work experience that involves plans examination. She took 21 credits at Mesa College which can be applied towards meeting the first requirement. (Def['s] Reply (#25)7.) A full year of college is equal to 30 credits so her 21 credits equals just over 8 months of experience. Id. She was employed as an Engineering Tech I/II and Senior Engineering Tech for a total of three years. Id. at 8-9. Subsequently, she

was employed as a Plans Checker I/II for one year. Therefore, Gonzalez meets the first minimum requirement of a Bachelor's Degree or the equivalent in experience as a plans examiner. Furthermore, Gonzalez has eight months of work experience remaining as a Plans Checker I/II that can be applied to the second minimum requirement of three years full time professional experience in plans examination. She was employed as a Building Plans Examiner I/II for at least two years and five months. Id. It is unnecessary to determine whether she was a Building Plans Examiner I/II for more than two years and five months because that time, when added to the eight remaining months of experience, is over three years. Gonzalez meets the second requirement for the position. Plans examination is listed in the job description of all of Gonzalez's previously held positions so any argument that this experience should not apply is in apposite. Id. at 8-11.

The alleged material misrepresentation is also without support. Gonzalez never claimed or misrepresented anything in her education background. She stated on the application that she took 21 college credits as a civil engineering major and that she did not receive a degree. Gonzalez never claimed that she graduated from Mesa College or received any other college credit.

Hansen's final argument for a discriminatory pretext centers on the fact that Gonzalez was already a member of the MPT team and that Ragain was her supervisor. These allegations standing alone do not provide the kind of evidence needed to find a discriminatory motive. Hansen fails to meet his burden of showing a discriminatory pretext either by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable or that unlawful discrimination more likely motivated the employer. Lindsey, 447 F.3d at 1148.

Hansen's case is further weakened by the same-actor doctrine. Where "the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." Coghlan v. Am. Seafoods, Co., LLC., 413 F.3d 1090, 1096-97 (9th Cir. 2005) (quoting Bradley v. Harcourt & Co., 104 F.3d 267, 271 (9th Cir. 1996)). The inference is based

on the principle that "an employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs." Coghlan, 413 F.3d at 1098. Although the same-actor inference is not a mandatory presumption, it creates a strong inference that a court must take into account on a summary judgment motion. Id. Thus, to overcome the inference, a plaintiff must present evidence of a "strong case of bias" on the part of the employer. Id.

Hansen claims that Clark County discriminated against him because of gender and age through the conduct of his supervisors. Prior to the promotion being offered, Clark County offered Hansen a position on the MPT team that he turned down. (Def['s] Motion for Summary Judgment (#18)6.) Although this was a lateral move, Hansen would have been a member of the MPT team which is considered an elite position in comparison to his current position. (Def['s] Reply (#25)16.) A strong inference arises against any discriminatory notice because this position was offered to Hansen by Ragain and Wilson-Pappa who he now accuses of age and gender discrimination. Id. The same-actor inference serves to further defeat Hansen's Title VII claim of age and gender discrimination.

Examining the evidence in the light most favorable to Hansen, the Title VII claim cannot succeed at trial, and, therefore, Clark County is entitled to judgment as a matter of law.

**B.    42 U.S.C § 1983 Claim**

Hansen claims that he was subjected to age and gender discrimination due to illegal employment practices. (Pl['s] Complaint (#1)4.) He alleges that Clark County failed to protect him from these discriminatory practices which led to harm and damages. Id. at 5. Hansen claims that Clark County is responsible for the acts of its employees. Clark County is a local governmental body.

Municipalities and other local governmental bodies are "persons" within the meaning of § 1983. Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1994) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 688-89 (1978). A municipality or local governmental body may be held liable under a claim brought under § 1983 only when the municipality or local governmental body inflicts an injury, and it may not

be held liable under a respondeat superior theory. Monell, 436 U.S. at 694.  At least two routes can lead to the conclusion that a municipality or local governmental body has inflicted a constitutional injury. First, a plaintiff can show that a municipality or local governmental body itself violated someone's rights or that it directed its employee to do so.  Board of County Comm'rs, 520 U.S. at 404. Alternatively, in limited situations, a plaintiff can demonstrate that a municipality or local governmental body is responsible for a constitutional tort committed by its employee, even though it did not direct the employee to commit the tort. Id., at 406-07; Canton, 489 U.S. at 387.

Under one route to liability, a municipality or local governmental body may be liable under § 1983, just as natural persons are, because when Congress enacted § 1983 it "intend[ed] municipalities and other local government units to be included among those persons to whom § 1983 applies."  Monell, 436 U.S. at 689.  To show that the municipality or local governmental body violated someone's rights or instructed its employees to do so, a plaintiff can prove that the municipality or local governmental body acted with "the state of mind required to prove the underlying violation," just as a plaintiff does when he or she alleges that a natural person has violated his federal rights. Board of County Comm'rs, 520 U.S. at 405.

Under a second route to municipality liability, a plaintiff need not allege that the municipality or local governmental body itself violated someone's constitutional rights or directed one of its employees to do so. Instead, a plaintiff can allege that through its omissions the municipality or local governmental body is responsible for a constitutional violation committed by one of its employees, even though the municipality or local governmental body's policies were facially constitutional, the municipality or local governmental body did not direct the employee to take the unconstitutional action, and the municipality or local governmental body did not have the state of mind required to prove the underlying violation. Canton, 489 U.S. at 387-89.  However, because Monell held that a municipality or local governmental body may not be held liable under a theory of respondeat superior, a plaintiff must show that the
///

municipality or local governmental body's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation. Id. at 387.

To prove deliberate indifference, the plaintiff must show that the municipality or local governmental body was on actual or constructive notice that its omission would likely result in a constitutional violation. Farmer v. Brennan, 511 U.S. 825, 841 (1994). Compared to the more direct route to municipal liability discussed above, "much more difficult problems of proof" are presented in a case where a city employee acting under a constitutionally valid policy violated someone's rights. Board of County Comm'rs, 520 U.S. at 406.

Hansen alleges that he was not given the promotion to the MPT team because of age and gender discrimination. However, Hansen failed to show that Clark County's legitimate, nondiscriminatory reason for not promoting Hansen was a pretext for discrimination. Clark County did not discriminate against Hansen by not promoting him. Therefore, there is no violation of constitutional rights that would subject Clark County to liability under 42 U.S.C. § 1983. There cannot be municipal liability if Hansen's constitutional rights were not violated either through intentional acts or deliberate indifference by Clark County. Examining the evidence in the light most favorable to the Hansen, the 42 U.S.C. § 1983 claim cannot succeed at trial, and, therefore, Clark County is entitled to judgment as a matter of law.

**C.     Negligent Supervision**

Because Clark County has been granted summary judgment on the causes of action over which the Court had original jurisdiction pursuant to 28 U.S.C. 1331, the Court declines to exercise supplemental jurisdiction over the pendent claim of negligent supervision. The cause of action alleging negligent supervision is therefore dismissed for lack of subject matter jurisdiction.

///

///

///

### III. Conclusion

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (#17) is **GRANTED.**

DATED: This 27th day of June, 2007.

_____
UNITED STATES DISTRICT JUDGE